GAGER, Appellant, vs. STOLLE-BARNDT LUMBER COMPANY, Respondent.

*March 13—April 3, 1912.*

*Master and servant: Injury from defects in car received from railroad for loading: Presumptions as to condition of car: Duty to inspect.*

1. Where a railway company places a freight car, with brakes set, on a sidetrack to serve the business of a proprietor whose employees are expected, according to custom, to move the car to the particular point for loading, such proprietor has a right to presume that it is in suitable condition for use, unless the contrary appears without particular or technical inspection, in the absence of obvious defects or knowledge of some fact or circumstance, actually or constructively brought home to such proprietor, which would ordinarily put an ordinarily careful person on such inquiry as to lead to knowledge of a contrary condition existing. So *held* in an action against the proprietor by an employee alleged to have been injured by reason of defects in the brake of such car.
2. The proprietor in such case is bound to observe defects which would naturally and ordinarily attract the attention of a person so circumstanced, having no duty to look particularly or search for such difficulties.

APPEAL from a judgment of the circuit court for Lincoln county: A. H. REID, Circuit Judge. *Affirmed.*

Action to recover for a personal injury.

Plaintiff was engaged in a lumbering business at Tripoli, Wisconsin, on the Soo Railroad. The business was served by the railroad company by means of a switch track owned by it whereby freight cars to take out lumber, several at a time if necessary, could be set in to the planing-mill platform from the main track. The practice was for trainmen to place cars at a convenient place for the lumber company on the switch track and set the brakes and for its servants to move them down to the desired position for loading, as required, and move them out of the way after loading; the moving being done by means of a pinchbar or a block and tackle and team. The track was constructed with a slight down grade from the main track so as to facilitate the moving of cars. In moving a car it was necessary for a man to be at the brake to release it in starting and to control the car thereafter. Plaintiff, in performance of his duties at the time in question, was engaged, with the block and tackle and a team, in so moving a car. There was a man at the brake, the block was fastened to the car by means of a short piece of chain, and the anchor end of the working chain was attached to the side of the track about sixty-five feet from the car, by means of a grab hook. In due course, the brake was released, plaintiff gave his team the word, he being in an appropriate position, and the car started. After it had moved a few feet, the team being on the east side of the track, he drove to the other side so the chain would not get caught under the east wheel. As he did so some complication occurred causing the team to be drawn back toward the car. He became fearful that the team and the car might collide and so endeavored to unhitch the team by loosening the chain from the whiffle-trees. To do that he took the reins in his left hand and worked at the chain with his right, trying to get slack enough to enable him to accomplish his purpose. While so engaged, the chain passed rapidly through the pulley near the car as the whiffle-trees neared it. He did not appreciate his danger till the hand that was on the chain came

in contact with the pulley and was drawn in and injured. The man on the car observed that plaintiff was having some difficulty, and exerted himself to the best of his ability to stop the car by setting the brake. Had it worked properly he would have succeeded. Something was out of order by reason of which he was unable to stop the car till it had moved a considerable distance down the track from where the accident occurred. There was evidence tending to show that the brake chain would slip off of the end of the brake rod before being tightened up efficiently, thus preventing the brakeman from controlling the car. There was also evidence to the effect that such a condition might exist in such a braking appliance from any one of several causes. There was an entire failure of evidence as to what particular defect caused the difficulty at the time in question, and as to whether any was discoverable without a particular inspection, and, further, as to whether the particular difficulty would have manifested itself except by an actual trial of the brake when the car was in motion. It was undisputed in the case that neither defendant's superintendent nor any one in its employ knew of the brake being out of order till the occasion in question.

The cause was submitted to the jury resulting in a finding, among others, that the defective condition of the brake was not discoverable before the accident by inspection of the car by an ordinarily intelligent person, using ordinary care, while the car was at rest. Having so found, the jury omitted any finding as to proximate cause.

On the subject of inspection the jury were instructed, in effect, that it was the duty of defendant to make such general external examination of the car as is ordinarily made under the same or similar circumstances, so as to discover and appreciate obvious defects caused by want of repair; that a particular inspection was not required; that defendant had a right to assume that all parts of the car, which upon general

observation appeared to be in proper condition, were so; that if the jury could not be satisfied from the evidence that there was any particular defect observable from such inspection as a person circumstanced like defendant would ordinarily make, they could not answer the question "Yes."

The court gave judgment on the verdict for defendant.

For the appellant there were briefs by *Van Hecke & Fisher* and *F. J. Smith,* and oral argument by *W. E. Fisher.*

For the respondent there was a brief by *Ralph E. Smith,* attorney, and *Edward M. Smart,* of counsel, and oral argument by *R. N. Van Doren.*

MARSHALL, J.   Neither in principle nor authority can we perceive any infirmity in the doctrine which the trial court applied to this case and ruled it, viz.: if a railroad company places a freight car, with brake set, on a sidetrack for the purpose of serving a particular business, the employees there being expected, according to custom, to move the car to the particular point for loading material or articles thereon, the proprietor of such business has a right to presume that it is in suitable condition for use, unless the contrary appears without particular or technical inspection, in the absence of obvious defects or knowledge of some fact or circumstance, actually or constructively brought home to such proprietor, which would ordinarily put an ordinarily careful person on such inquiry as to lead to knowledge of a contrary condition existing. The proprietor of such business is bound to observe defects which would naturally and ordinarily attract the attention of a person so circumstanced, having no duty to look particularly or search for such difficulties.

The situation of respondent was as above indicated.   When it found the car on the sidetrack leading to its loading place, it was consistent with ordinary care to assume that the brake appliance was in proper condition.   There was nothing to in-

dicate otherwise, as the car stood on the track, unless one searched for imperfections.   The jury so found, which entitled respondent to judgment.

Some complaint is made of the instructions which need not be discussed.   They were probably more favorable to appellant than he was entitled to.   They were to the effect that, it was the duty of respondent to make an ordinary external examination for the purpose of discovering whether the car was in a reasonably safe condition.   As before indicated, it was not respondent's duty to look for defects.   It had a right to assume, under the circumstances, that the car was in proper condition for use.   The act of setting the car in therefor involved a representation that it was in such condition, which respondent had a right to rely on except as to obvious defects, and there were none.   Such a case is not within any rule requiring an inspection.   It is simply within the rule that one must see defects which are open and obvious to ordinary attention of a person working with the appliance under the circumstances of its use.   Such a person would naturally proceed upon the theory that no substantial defects existed in an appliance furnished to him by the owner for his use.   The rule does not apply as in case of a railroad receiving cars from a connecting line, which are liable to become out of repair in the course of transit to the place of transfer, but the one in case of furnishing an implement for use under such circumstances as to suggest that it is ready therefor.

*By the Court.*—The judgment is affirmed.